UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THEOSHAMOND NORMAN (#407759)  CIVIL ACTION

VERSUS

JERRY JOHNSON  NO. 15-108-JJB-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 5, 2016.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THEOSHAMOND NORMAN (#407759)                          CIVIL ACTION

VERSUS

JERRY JOHNSON                                          NO. 15-108-JJB-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' cross-motions for summary judgment (R. Docs. 19 and 32).

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Sgt. Jerry Johnson complaining that his constitutional rights were violated on June 30, 2013, when defendant Johnson failed to protect him from harm at the hands of a co-inmate on that date.

The plaintiff moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, excerpts of his medical records, a copy of an ARP Statement signed by defendant Johnson on December 18, 2013, and defendant Johnson's "Response to Interrogatory #5" and "Response to Interrogatory #10." The defendant moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent Administrative Remedy proceeding, and the affidavit of Rhonda Z. Weldon.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify

those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges the following:  On June 25, 2013, the plaintiff was serving half cups of coffee and juice to inmates in administrative segregation per the orders of Msgt. Drake.  When co-inmate Derrick Williams received his half cups of coffee and juice he verbally insulted and threatened the plaintiff.  The plaintiff informed his co-workers about the incident and they warned him to stay away from inmate Williams.  The plaintiff then

requested that he be given permission to serve full cups of coffee and juice, which was denied by an unknown tier officer. The plaintiff informed the same unknown tier officer that he had been threatened by inmate Williams.

On June 28 and 29, 2013, the plaintiff received no further threats because he served full cups of coffee and juice when he was not being observed. During the same time period, he informed the Unit Major of the problems he was experiencing with other inmates due to serving only half cups of coffee and juice.

On June 30, 2013, at approximately 6:00 a.m., inmate Williams attempted to initiate an argument with the plaintiff as he was serving coffee and juice. Upon exiting the tier, the plaintiff informed defendant Johnson that he had been repeatedly threatened by inmate Williams, and defendant Johnson responded by stating, "There's one way to resolve this. Wanna get it off ya chest?" The plaintiff then went to retrieve another container of juice.

When the plaintiff returned with the juice, he was told to serve the upper right tier first because those inmates had already received their food. The plaintiff was being observed by defendant Johnson; therefore, he served only half cups of coffee and juice. Inmate Williams began screaming vulgarities towards the plaintiff and threatened to beat him when received his half cups of coffee and juice. Defendant Johnson was standing at the front of the tier and was listening to the verbal altercation. The plaintiff continued to serve beverages down the tier until he heard someone call his name. When he turned around, inmate Williams physically attacked the plaintiff.

Following the attack, the plaintiff was seen by an EMT who noted no visible injuries; however, the plaintiff alleges that he was experiencing difficulty speaking and breathing out of his nose, the left side of his face was swollen, there was blood in his left eye and he was unable

to see out of it, and there were scratches on his face, chest, and neck.  On July 2, 2013, the plaintiff sought additional medical care and was sent to Lallie Kemp Regional Medical Center where several fractures on the left side of the plaintiff's face were discovered.  The plaintiff was told surgery may be needed.  On July 30, 2013, the plaintiff was sent to University Medical Center in New Orleans and was told that his face would heal on its own but there was some concern regarding his eye.  On August 6, 2013, the plaintiff was sent to an eye clinic in New Orleans for additional care.  The plaintiff sustained fractures in the left side of his face, orbital hemorrhage, temporary loss of sight in his left eye, a knot under his right eye, two knots near his jaw, pain in his temples, spitting up blood, inability to fully open his mouth, needle like pain in his left eye and upper teeth, lacerations and abrasions on his back, forehead, and upper chest, and difficulty breathing through his nose as a result of the attack by inmate Williams.

In response to the plaintiff's allegations, the defendant contends that the claim asserted in this proceeding is time-barred.  Specifically, the defendant asserts that more than one year of un-tolled time elapsed after the referenced incident before the plaintiff filed his Complaint herein.  As discussed hereafter, the Court finds that the defendant's assertion is correct.

Inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims.  *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  In Louisiana, the applicable period of limitations is one year.  La. Civ. Code Art. 3492.[1]  Moreover, under federal law, a cause of action under 42 U.S.C. § 1983 accrues "when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof."  *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995)

---

[1] *See* La. Civ. Code Art. 3456

(citations and internal quotation marks omitted).  A plaintiff need not realize that a legal cause of action exists but must only have knowledge of the facts that support a claim.  *Id.*  Under Louisiana law, a party pleading a limitations defense normally has the burden of establishing the elements of that defense.  *See Savoy v. St. Landry Parish Council*, 2009 WL 4571851, *3 (W.D. La. Dec. 1, 2009).  However, when the face of the plaintiff's Complaint reflects that more than a year has passed since the events complained of, the burden of proof shifts to the plaintiff to show that the limitations period has been interrupted or tolled.  *Id.*

In the instant case, the incident complained of by the plaintiff occurred on June 30, 2013, on which date the plaintiff sustained injury and was possessed of sufficient information to place him on notice of the existence of his cause of action.[2]  Accordingly, the plaintiff's claim accrued on that date, and he had one year within which to file a complaint in this Court.  Ordinarily, therefore, any claim that the plaintiff may have had against the defendants arising out of the incident complained of would be seen to have prescribed no later than June 30, 2014, the one-year anniversary of the incident.  Further, inasmuch as the plaintiff did not file his federal Complaint until, at the earliest, February 19, 2015, the date that he apparently signed it, it appears from the face of the Complaint that his claim is time-barred.  Accordingly, the burden of proof shifts to the plaintiff to show that the limitations period in this case was interrupted or tolled during the one-year period.

In seeking to avoid the effect of the one-year limitations period, the plaintiff contends that he filed an administrative grievance with prison officials relative to the claim asserted herein

---

[2] The plaintiff asserts in his Motion for Summary Judgment that he did not learn of his injuries until July 2, 2013; therefore, his cause of action did not accrue until that date.  *See* R. Doc. 32-1.  While it may be true that the plaintiff was not aware of the extent of his injuries until he received additional medical care on July 2, 2013, the plaintiff alleges in short that on June 30, 2013 he complained to defendant Johnson of the threats made by inmate Williams, defendant Johnson failed to implement any measures to protect the plaintiff, the plaintiff was then attacked by inmate Williams, and the plaintiff was injured.  As such, the plaintiff had sufficient knowledge on June 30, 2013 for his cause of action to accrue.

and that, in computing the applicable limitations period, this Court is obligated to take into account the time during which the administrative proceedings were pending within the prison system. *See Harris v. Hegmann*, 198 F.3d 153, 158-59 (5th Cir. 1999) (finding that the pendency of a properly-filed administrative grievance will act to toll or suspend the running of the one-year limitations period for a prisoner's claim).

Initially, the plaintiff is correct that, in calculating the applicable limitations period, the Court is required to take into account the time during which the plaintiff's administrative remedy proceedings were pending within the prison system. *See Harris v. Hegmann*, *supra*. The filing of an administrative grievance, however, only tolls or suspends, and does not interrupt, the running of the prescriptive period. *See* La. R.S. 15:1172(E) (providing that the limitations period for a prisoner's claim "shall be suspended upon the filing of [an administrative] ... grievance and shall continue to be suspended until the final agency decision is delivered"). Thus, this Court is required to count against the plaintiff the passage of days that elapsed both before the filing of the pertinent administrative grievance and after the conclusion of the administrative proceedings. *See Adams v. Stalder*, 934 So.2d 722, 725-26 (La. App. 1st Cir. 2006) (explaining that with a suspension of the limitations period, in contrast to an interruption, "the period of suspension is not counted toward the accrual of prescription but the time that has previously run is counted.... In other words, ... the clock merely stops running during the suspension, and thereafter the obligee has only so much of the one year as was remaining when the suspension began").

Applying the foregoing to the events of June 30, 2013, the Court has concluded that the plaintiff's claim accrued and the one-year limitations period commenced to run on that date. In addition, the record reflects that the plaintiff submitted a request for administrative remedy to prison officials thereafter. The first question for the Court to consider is the date upon which that

administrative grievance tolled the limitations period. In this regard, it appears that the plaintiff's grievance is hand-dated September 6, 2013, and also that there are two (2) date-stamps on the certified copy of the grievance contained in the plaintiff's administrative record, reflecting receipt of the grievance by prison officials on September 11, 2013. *See* R. Doc. 16-1, p. 4. The defendant has utilized the date the plaintiff's grievance was signed, September 6, 2013, in making his calculations relative to the running of the limitations period. Regardless of the date used, the Court's determination is the same.[3]

Turning to the next part of the calculation, it appears from a review of the administrative record that the plaintiff's administrative proceedings remained pending and thereby suspended the running of the limitations period until those proceedings were concluded by the plaintiff's receipt of the final agency response on April 7, 2014. *See* R. Doc. 16-1, pp. 3, 21. *See also* La. R.S. 15:1172(E) (providing that the limitations period is "suspended until the final agency decision is *delivered*" (emphasis added)); *Harris v. Hegmann, supra*, 198 F.3d at 160 (noting that the pertinent date is the date an inmate "receive[s] final notice that his administrative complaint was dismissed"). Accordingly, the applicable limitations period began to run again on that date and, depending upon which of the two potential dates the Court utilizes for the commencement of the plaintiff's administrative proceedings, he then had either two hundred and ninety-two (292) days remaining in the one-year limitations period – resulting in a limitations deadline of

---

[3] Considering, however, that the official Louisiana Prison Administrative Remedy Procedure states that a prisoner commences the administrative process merely by "completing a request for administrative remedy" or "writing a letter to the warden," and inasmuch as the deadline for responding to an inmate's grievance begins on the date the grievance is "received" by the warden's office, see La. Admin. Code Tit. 22, Pt. I, §§ 325(G)(1)(a)(I) and 325(J)(1)(a)(ii), it appears appropriate to utilize either September 6, 2013, the date the plaintiff signed his grievance, or September 11, 2013, the date the plaintiff's grievance was received by the warden's office. As a result, if the Court were to utilize September 11, 2013, in making its calculations, it would appear that seventy-three (73) days elapsed from the one-year limitations period between the occurrence of the incident complained of and the plaintiff's submission of his administrative grievance. In contrast, if the Court were to utilize September 6, 2013, then sixty-eight (68) days may be seen to have elapsed. The determination of the correct date is not critical, however, because under either scenario, the plaintiff's Complaint is not timely-filed.

January 26, 2015[4] – or two hundred and ninety-seven (297) days remaining – resulting in a deadline of January 29, 2015.[5]

Finally, the Court looks to the period of time that elapsed between the conclusion of the plaintiff's administrative remedy proceedings and the commencement of his proceedings before this Court. The plaintiff's Complaint was docketed on February 25, 2015, the day it was received by the U.S. District Court for the Middle District of Louisiana. *See* R. Doc. 1. The courts of this Circuit have long concluded that the prison mailbox rule applies to the filing of pleadings submitted to courts by Louisiana *pro se* inmates. Pursuant to that rule, an inmate's pleadings are considered to be filed on the date that they are presented to prison officials or placed into the prison mailing system for transmission to the Court, not on the date that they are ultimately received or docketed by the Court. *See Cooper v. Brookshire*, 70 F.3d 377, 379-80 (5th Cir. 1995); *Vicks v. Griffin*, 2008 WL 553186, *3 (E.D. La. Feb. 28, 2008). The inherent basis for the rule is a recognition that, "[u]nskilled in law, unaided by counsel, and unable to leave the prison, [a prisoner's] control over the processing of his [pleadings] necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities." *Cooper v. Brookshire, supra*, 70 F.3d at 379, *quoting Houston v. Lack*, 487 U.S. 266, 271-72 (1988). The *Cooper* court also recognized that application of the rule allows courts to sidestep such potentially difficult issues as the possible motivation of prison officials to delay or obstruct the filing of inmates' complaints, and "pretermits time-consuming examinations of the circumstances behind any delay." *Id.* Thus, in the absence of evidence to the contrary,

---

[4] The actual filing date if two hundred and ninety-two (292) days remained in the one-year limitations period is January 24, 2015; however, January 24, 2015 was a Saturday.

[5] Even if the Court were to utilize July 2, 2013 as the date the plaintiff's cause of action accrued, as asserted by the plaintiff, resulting in two hundred ninety-nine (299) days remaining in the one year limitations period, the corresponding deadline would be February 2, 2015 (the actual deadline would be January 31, 2015 which was a Saturday), not February 25, 2015 as asserted by the plaintiff.

courts have generally presumed that the date that an inmate has signed and dated his Complaint is the date that he has given it to prison officials for mailing to the courts. *See Toomer v. Cain*, 2010 WL 4723365, n. 3 (E.D. La. July 30, 2010) (finding that, "[g]enerally, a court will look to the date a prisoner signed his pleading"). In the instant case, the plaintiff's Complaint, Declaration, and Motion to Proceed *in Forma Pauperis* were signed and dated by him on February 19, 2015. Accordingly, the Court finds that February 19, 2015, is the applicable filing date of the plaintiff's federal Complaint herein, and inasmuch as that date is beyond the one-year limitations period, irrespective of which date is utilized in determining the commencement of the plaintiff's administrative proceeding, the plaintiff's Complaint should be found to be untimely.[6]

## RECOMMENDATION

It is recommended that the defendant's Motion for Summary Judgment (R. Doc. 19) be granted, and that this action be dismissed with prejudice as untimely. It is further recommended that the plaintiff's Motion for Summary Judgment (R. Doc. 32) be denied.

Signed in Baton Rouge, Louisiana, on May 5, 2016.

_____
RICHARD L. BOURGEOIS, JR.
**UNITED STATES MAGISTRATE JUDGE**

---

[6] In his Opposition to the defendant's Motion for Summary Judgment the plaintiff asserts that his Complaint was actually filed on January 15, 2015, the day after the Statement of Account attached to his Motion to Proceed *in Forma Pauperis* was certified. The plaintiff asserts that there was a delay in obtaining a notary and that prison officials held his mail; therefore, he dated his pleadings February 19, 2015. The plaintiff directs the Court to his Declaration, a mailing slip, and withdrawal form. *See* R. Doc. 31-1. A review of the record reveals that the Statement of Account was signed by Sandra Rosso on January 14, 2015; however, the plaintiff's Declaration does not contain the signature of a notary nor was such a signature necessary for the plaintiff to submit his Declaration pursuant to 28 U.S.C. § 1746. The referenced mailing slip and withdrawal form could not be located in the Record. Additionally, the plaintiff abandons this argument in his Motion for Summary Judgment, and asserts that his Complaint, dated February 19, 2015, was timely filed since the deadline for prescription was February 25, 2015. *See* R. Doc. 32-1.